UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LINDA DARLENE SURBER,

        Plaintiff,

vs.                              Case No. 3:11-cv-1235-J-MCR

COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION,

        Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her application for Social Security benefits. The Court has reviewed the record, the briefs, and the applicable law. For the reasons set forth herein, the Commissioner's decision is **AFFIRMED**.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits ("DIB") and supplemental security income ("SSI") on August 26, 2009, alleging she became disabled on February 1, 2008. (Tr. 37-38, 107). The Social Security Administration denied Plaintiff's application initially and on reconsideration. (Tr. 37-48). Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). (Tr. 58). The ALJ held a hearing on June 1, 2011 and later received additional testimony by

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 14).

-1-

interrogatory responses from Plaintiff. (Tr. 28-36, 186-92). The ALJ issued a decision on July 26, 2011, finding Plaintiff not disabled. (Tr. 8-27). The Appeals Council denied Plaintiff's request for review. (Tr. 1-3). Therefore, the Commissioner's decision is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.   NATURE OF DISABILITY CLAIM

### A.   Basis of Claimed Disability

Plaintiff claims to be disabled since February 1, 2008, due to knee pain, low back pain, and an immune system virus (i.e. Esptein-Barr) that limited her ability to walk, lift, and stand. (Tr. 143, 165, 190).

### B.   Summary of Evidence Before the ALJ

Plaintiff was 50 years old at the time of the ALJ's decision and has two years of college education. Plaintiff has past relevant work experience as an accounting clerk, a receptionist, a waitress, and a bookkeeper. (Tr. 31, 33, 148, 187-88). Plaintiff's medical history is discussed at length in the ALJ's decision and will be summarized herein.[2]

Dr. Charles Greene, a specialist in otolaryngology, treated Plaintiff from September 2010 through February 2011. (Tr. 545-69). At Plaintiff's initial visit, she reported intermittent hoarseness resulting in a husky voice on a recurrent basis. However, no abnormalities were observed in Plaintiff's throat. (Tr. 565-67). In January 2011, Dr. Greene's examination of Plaintiff's mouth, tonsils, and throat was generally unremarkable but revealed that her lingual tonsil tissue was enlarged. (Tr. 551). Dr.

---

[2]   The Court will only address those records pertaining to Plaintiff's voice and hearing impairments, as those are primarily at issue here. See (Doc. 20).

Green diagnosed Plaintiff with chronic hoarseness.  (Tr. 546).  At each of Plaintiff's appointments in September 2010, November 2010, December 2010, and January 2011, Dr. Greene found that Plaintiff's voice was "[n]ormal" and that Plaintiff "[d]emonstrate[d] [the] ability to communicate effectively."  (Tr. 551, 562, 556, 566).

A microdirect laryngoscopy was performed to observe Plaintiff's throat and associated biopsy of Plaintiff's tissue to rule out cancer.  (Tr. 308).  No evidence of malignancy was identified, and Dr. Greene noted that his diagnoses of lingual tonsil hypertrophy (i.e. swelling of the tonsils) was consistent with the study.  Later, Dr. Greene performed another laryngoscopy in order to confirm proper healing of Plaintiff's biopsy, and found a decrease in the size of Plaintiff's lingual tonsils and mild redness. (Tr. 547).  Baptist Medical Center records dated February 2011, noted that Plaintiff had a history of chronic hoarseness and hypertrophic lingual tonsil tissue that had not resolved.  (Tr. 299).

With regard to Plaintiff's hearing, Dr. Greene noted that Plaintiff had a history of ear infections with associated hearing loss, which had been gradual and intermittent over a period of years.  (Tr. 565).  Plaintiff reported two ear infections, which Dr. Greene attributed to Plaintiff's use of cotton-tipped applicators to clean her ears.  (Id.).  Dr. Greene ordered an audiogram that revealed "moderate to severe mixed and left mild to moderate [sensorineural hearing loss]," noting that Plaintiff was a candidate for hearing aid amplification.  (Tr. 557, 560, 562).  Dr. Greene did not indicate that Plaintiff had any work related restrictions due to her hearing and found she was able to respond to "whispered sounds."  (Tr. 551, 556, 562, 567).

### C. **Summary of the ALJ's Decision**

A plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 42 U.S.C. §§ 416(I), 423(d)(1)(A); 20 C.F.R. § 404.1505. The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 29 C.F.R. §§ 404.1520(b), 416.920(a)(2)(I). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(a)(2)(ii). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. §§ 404.1520(d), 416.920(a)(2)(iii). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(a)(2)(iv). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. §§ 404.1520(f), 416.920(a)(2)(v). Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant case, at step one, the ALJ found Plaintiff met the insured status requirements for DIB through June 30, 2009 and had not engaged in substantial gainful activity since February 1, 2008. (Tr. 16). At step two, the ALJ found Plaintiff had the following severe impairments: history of bilateral knee disorders, history of bilateral rotator cuff disorders, chronic neck and back pain, and decreased hearing bilaterally. (Id.). At step three, the ALJ determined Plaintiff did not have an impairment, or any combination thereof, which met or equaled any of the impairments listed in Appendix 1, Subpart P of the Regulation No. 4. (Tr. 17). The ALJ further determined Plaintiff had the residual functional capacity ("RFC")[3] to perform light work,[4] except that Plaintiff could only occasionally perform postural activities such as balancing, stooping, kneeling, crouching, crawling, and climbing ladders, ropes, and scaffolds. The ALJ also found that due to Plaintiff's intermittent history of hearing loss, she should avoid concentrated exposure to hazardous environments. (Id.).

---

[3] The residual functional capacity is the most an individual can do despite the combined effect of all of their credible limitations. 20 C.F.R. §§ 404.1545, 416.945. The residual functional capacity is based on all of the relevant evidence in the case record, and is assessed at step four of the sequential evaluation. Id.

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

Based on this RFC finding, the ALJ determined that Plaintiff was able to perform her past relevant work as an accounting clerk and bookkeeper. Therefore, Plaintiff was not under a "disability," as defined in the Social Security Act. (Tr. 22).

## III. ANALYSIS

### A. The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837

(11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### B.     Issues on Appeal

Plaintiff raises the following three issues on appeal: (1) whether the ALJ properly analyzed Plaintiff's vocal limitations (Doc. 20, pp. 9-14); (2) whether the ALJ properly analyzed the limiting effects of Plaintiff's hearing impairment (Id. at pp. 14-16); and (3) whether the ALJ erred in relying on the opinion of state agency medical consultant, Dr. Pontiero (Id. at pp. 16-17).  The Court will address each of these issue in turn.

#### 1.     Whether the ALJ properly analyzed Plaintiff's vocal limitations.

Plaintiff contends that the ALJ failed to properly analyze her vocal limitations caused by chronic hoarseness.  (Doc. 20, pp. 9-14).  In response, the Commissioner argues that there is no objective medical evidence supporting additional RFC limitations due to Plaintiff's alleged hoarseness.  (Doc. 21, pp. 6-11).

As an initial matter, the Court notes that Plaintiff did not complain of hoarseness until September 2010, over a year after her insured status for DIB expired on June 30, 2009.  (Tr. 565); see 42 U.S.C. §§ 416(i)(3), 423(a), (c); 20 C.F.R. §§ 404.101, 404.130, 404.131 (explaining that Plaintiff must prove her disability for DIB purposes prior to her date last insured).  Nevertheless, medical records after June 30, 2009 remain relevant to Plaintiff's application for SSI.

Plaintiff first complained to Dr. Greene about her "husky" voice in September 2010.  At that time, Dr. Greene observed no abnormalities in Plaintiff's throat.  (Tr. 567).  In January 2011, Dr. Greene's examination of Plaintiff's mouth, tonsils, and throat

remained generally unremarkable but revealed some swelling in that her lingual tonsil tissue was enlarged. (Tr. 551). In addition, at each of Plaintiff's appointments in September 2010, November 2010, December 2010, and January 2011, Dr. Greene found that Plaintiff's voice was "[n]ormal" and that Plaintiff "[d]emonstrate[d] ability to communicate effectively." (Tr. 551, 562, 556, 566).

Plaintiff argues the ALJ erred because he failed to discuss her surgery[5] or her difficulty speaking at the administrative hearing. However, the ALJ discussed Dr. Greene's treatment notes and opinions (Tr. 20), and Plaintiff failed to produce any medical evidence that her speech impairment limited her ability to perform her past relevant work, much less limited her abilities for twelve consecutive months. See 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 404.1521(a), 416.909, 416.920(a)(4)(ii), 416.921(a) (An impairment or combination of impairments is "severe" if it significantly limits an individual's ability to perform basic work activities for at least twelve consecutive months.). Although Plaintiff claimed to have difficulty speaking at the hearing and answered written interrogatories instead of testifying, she was represented by an attorney and never mentioned any disabling limitations caused by her ability to speak in any documents submitted to the agency prior to the hearing (Tr. 165) or in her interrogatory responses submitted after the hearing (Tr. 186-92). Indeed, at the hearing Plaintiff stated that her voice "comes and goes." (Tr. 33-36).

---

[5] A microdirect laryngoscopy was performed to observe Plaintiff's throat and associated biopsy of Plaintiff's tissue to rule out cancer. (Tr. 308). However, no evidence of malignancy was identified, and Dr. Greene noted that his diagnoses of lingual tonsil hypertrophy (i.e. swelling of the tonsils) was consistent with the study. Later, Dr. Greene performed a laryngoscopy of Plaintiff's throat in order to confirm proper healing of Plaintiff's biopsy, and found a decrease in the size of Plaintiff's lingual tonsils and mild redness. (Tr. 547).

Plaintiff argues that the Court should not engage in "*post hoc* rationalizations for the agency's actions."[6] However, as stated above, the ALJ discussed Dr. Greene's unremarkable treatment notes and observed that Plaintiff's voice was "normal" at each appointment. (Tr. 20). Thus, the Commissioner has not offered a revised rationale for the ALJ's decision; rather, he has permissibly referenced additional evidence in the record to establish that the ALJ's opinion that Plaintiff's voice was "normal" was supported by substantial evidence.[7] Accordingly, the Court finds substantial evidence supports the ALJ's decision that Plaintiff's hoarseness did not cause limitations beyond those established in Plaintiff's RFC.

### 2. Whether the ALJ properly analyzed the limiting effects of Plaintiff's hearing impairment.

Plaintiff contends that the ALJ erred in minimizing the effect of her hearing impairment on functioning in a work setting. (Doc. 20, pp. 14-16). In response, the Commissioner argues that Plaintiff failed to produce any objective medical evidence of limitations of hearing beyond those included in her RFC assessment. (Doc. 21, pp. 11-13).

---

[6] The Eleventh Circuit has held that a court may not affirm based on a *post hoc* rationale that might have supported the ALJ's conclusion. See Dempsey v. Comm'r of Soc. Sec., 454 F. App'x 729, 733 (11th Cir. 2011). If an action is to be upheld, it must be upheld on the same bases articulated in the agency's order. See Baker v. Comm'r of Soc. Sec., 384 F. App'x 893, 896 (11th Cir. 2010).

[7] Plaintiff concedes that the ALJ made the "implicit findings that [Plaintiff] does not have any limitations in the area of speaking." See (Doc. 20, p. 12).

Again, Plaintiff did not allege an inability to hear in forms submitted to the agency, at the hearing, or in her interrogatory responses submitted after the hearing.[8] (Tr. 143, 165, 186-92). Nevertheless, based on the ALJ's independent review of the medical records, he found that Plaintiff's decreased hearing was a severe impairment and limited her exposure to hazardous environments. (Tr. 16). As noted by the ALJ, Dr. Greene explained that Plaintiff had a history of ear infections with associated hearing loss, which had been gradual and intermittent over a period of years. (Tr. 20, 565). Dr. Greene ordered an audiogram that revealed "moderate to severe mixed and left mild to moderate [sensorineural hearing loss]," and noted that Plaintiff was a candidate for hearing aid amplification. (Tr. 557, 560, 562). However, Dr. Greene never indicated that Plaintiff had any work related restrictions due to her hearing impairment and found Plaintiff was able to respond to "whispered sounds." (Tr. 551, 556, 562, 567).

Plaintiff failed to identify any additional limitations on her ability to perform work related activities caused by her hearing impairment. Rather, Plaintiff argues that the ALJ erred because "the ALJ's limitation in the RFC regarding avoiding concentrated exposure to hazardous environment has no relation to a hearing impairment." (Doc. 20, p. 15). The Court disagrees and can certainly see a relation between the impairment and limitation imposed. For example, hazardous environments would likely contain a

---

[8] The Court notes that, for purposes of DIB, there is no medical evidence of of hearing loss prior to Plaintiff's date last insured.

-10-

high level of noise. In addition, in a hazardous environment, it would be crucial to hear the people and sounds around you for safety purposes.

Plaintiff "bears the burden of proving that [she] is disabled, and, consequently, [she] is responsible for producing evidence in support of [her] claim." Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003). Here, Plaintiff has failed to prove, or even argue, that her past relevant work requires that she be able to hear and understand sounds softer than "whispered sounds."[9] Accordingly, the Court finds Plaintiff has failed to meet her burden of proving she is incapable of performing her past relevant work.

### 3. Whether the ALJ erred in relying on the opinion of state agency medical consultant, Dr. Pontiero.

Plaintiff contends that the ALJ's erred in his reliance on the opinion of state agency physician Dr. Albert Ponterio, given that additional evidence was submitted after his opinion was issued. Specifically, Dr. Pontiero opined Plaintiff was capable of performing medium work. (Doc. 20, pp. 16-17). In response, the Commissioner argues that the ALJ properly accorded "significant weight" to the opinion of Dr. Ponterio, who reviewed the vast majority of the medical records and opined that Plaintiff could perform medium work.[10] (Doc. 21, pp. 13-15).

---

[9] Indeed, the Dictionary of Occupational Titles ("DOT") indicates that, as generally performed, the accounting clerk position requires hearing only up to a third of the time. See U.S. Dep't of Labor, DOT § 216.482-010 (4th ed. 1991).

[10] Dr. Pontiero's opinion is dated March 2010.

-11-

State agency medical consultants are non-examining sources who are highly qualified physicians and experts in Social Security disability evaluation, and their opinions may be entitled to great weight if supported by evidence in the record. See 20 C.F.R. §§ 404.1527(e)(2)(i); 416.927(e)(2)(i); SSR 96-6p. Although the ALJ accorded Dr. Ponterio's opinion significant weight, the ALJ found that Plaintiff was further restricted to a reduced range of light work. (Tr. 17).

Plaintiff identifies no medical evidence that contradicts Dr. Ponterio's opinion. See Milner v. Barnhart, 275 F. App'x 947, 948 (11th Cir. 2008) (finding an ALJ clearly does not err in giving opinions of non-examining physicians significant weight where they do not conflict with those of examining sources). Instead, Plaintiff argues Dr. Ponterio's opinion is outdated simply because Plaintiff submitted additional records after Dr. Ponterio rendered his opinion. However, an ALJ does not err in relying even on an "outdated" opinion so long as he also considers the relevant medical records submitted after the opinion was rendered and substantial evidence otherwise supports the decision. See Mullis v. Astrue, No. 07-1986, 2008 WL 4452343, at *15-16 (N.D. Ga. Sept. 30, 2008) (finding ALJ did not err in adopting a state agency medical consultant's opinion that was rendered two years prior to the ALJ's decision where the objective medical evidence otherwise supported the ALJ's decision); Zellner v. Astrue, No. 308-1205, 2010 WL 1258137, at *7 (M.D. Fla. Mar. 29, 2010) (finding reliance on outdated a state agency medical consultant's opinion would not require reversal if ALJ had also considered all the evidence of record).

Here, the ALJ considered the relevant medical records submitted after Dr. Ponterio rendered his opinion. (Tr. 19-22). Plaintiff argues that the additional records submitted after Dr. Ponterio's opinion addressed Plaintiff's bladder disorder, hearing impairment, hoarseness, and cough. However, as discussed above, the ALJ properly considered Dr. Greene's treatment notes, which addressed Plaintiff's hearing, hoarseness, and cough. (Tr. 546-69). Plaintiff does not allege what further limitations, if any, her alleged bladder disorder caused. Accordingly, the Court finds the ALJ properly relied on Dr. Ponterio's opinion in addition to the other evidence of record when assessing Plaintiff's RFC and ultimately determining that Plaintiff was not disabled.

In sum, the Court finds that Plaintiff failed to meet her burden of proving that her alleged speech and hearing loss precluded her ability to perform her past relevant work. Plaintiff produced no medical evidence in support of any limitations due to a speech impairment that would last for at least twelve months, and substantial evidence supports that Plaintiff's decrease in hearing caused no limitations beyond those assessed by the ALJ in his RFC finding. Furthermore, the Court finds that the ALJ properly relied on the opinion of Dr. Ponterio, in addition to other medical evidence of record, when assessing Plaintiff's RFC.

**IV. CONCLUSION**

Upon due consideration, the Court finds the decision of the Commissioner was decided according to proper legal standards and is supported by substantial evidence. As neither reversal nor remand is warranted in this case, and for the aforementioned reasons, the decision of the ALJ is hereby **AFFIRMED** pursuant to sentence four of 42

U.S.C. § 405(g).  The Clerk of the Court is directed to enter judgment consistent with this ruling and, thereafter, to close the file.

**DONE AND ORDERED** in Chambers in Jacksonville, Florida this  5th  day of March, 2013.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record